Smith, J.
The plaintiff in error was prosecuted before a justice of the peace, charged with the violation of section 2 of “ an act to-amend sections 1 and 2 of an act entitled an ‘ act to prevent the adulteration of vinegar,’ passed March 21, 1887, (84 Ohio Laws, 216), and to repeal section 3 of said act.” See 85 Ohio Laws, 259.)
The first section relates exclusively to cider vinegar, and the second section provides as follows: “ No person shall manufacture for sale, or knowingly offer for sale, qr have in his possession with intent to sell, any vinegar, found upon proper test to contain any preparation of lead, copper, sulphuric acid or other ingredients injurious to health, or containing artificial coloring matter.”
The complaint against the defendant charged that he “did knowingly have in his possession, with intent to sell, a quantity of vinegar, found upon proper test, containing artificial coloring matter, contrary to statute,” etc.
At the trial, defendant admitted that he had been in possession with intent to sell the same, of a quantity of vinegar, of *468 which samples were produced to be analyzed, which was thereupon analyzed by experts, who testified substantially that by such process burnt sugar was indicated, and which, in the opinion of one witness, had been added simply as coloring matter. One or more experts for the defendant substantially denied this. The counsel for the State admitted as a part of the evidence, and it was also proved, that the vinegar in question “ was a wholesome vinegar, and perfectly harmless to health.”
It was clearly shown by the evidence, and not controverted by the State, that the process of manufacturing the vinegar, which is offered for sale under the name of “Malt Vinegar,” was this: They take corn, malt and rye in certain-proportions; this is run through a mill and ground into meal; it is then put into a mash tub and cooked with steam for an hour 'and a half; from there it is taken and run into cooling pipes, and then discharged into the fermenting tanks, and allowed, aided by yeast, to ferment for one week ; it is then run into the still and distilled into weak alcohol, or, as it is termed, “ low wine,” of twenty per cent, strength; this low wine is run through a tank filled with roasted, malt; from this it is taken and pumped into the distributing tanks on the top floor of the factory, and is then run through small tanks, called generators, .which are filled with beech shavings, which convert the low wine and malt extract into absolutely pure acid ; and this is the vinegar so manufactured, and no other or foreign substance whatever is added to it afterwards or before.
The effect of passing the weak alcohol or low wane through the roasted malt, as before stated, is, that what was before colorless and tasteless, (except as weak alcohol has color and-’ taste), is to give the product a different color from that of the alcohol before it was run through the same, and also, as testified to by the defendant, to give the flavor of the malt through which it passed, and also some body and strength. It was then expressly admitted, on the part of the State, that .the said vinegar had both the flavor and aroma of malt.
Alfred Mack and C. B. Simrall, for Weller.
Dye & Dye, for State of Ohio.
The question which arises on this state of fact is, whether the color which is thus given to - the vinegar during the process of manufacture is caused by artificial coloring matter, in the meaning of the statute. Judge Swing is of the opinion that it is, and that the judgment of the justice of the peace, and that of the court of common pleas, affirming the same, are right. It seems to me that this is putting too strict and severe an interpretation upon the statute. I am willing to concede that if, after the completion of the process of manufacture, or even during any such process, any extraneous or foreign product is introduced for the simple purpose of changing the color of the article when finished, however harmless it may be, that it comes within the provision of the statute. But where, as in this case, the manifest purpose of the manufacturer is to produce a vinegar having the flavor and aroma of malt, and to accomplish this, it is, during the process of manufacture, passed through roasted malt to give it this flavor and aroma, and to some extent, body and strength, I think the fact that it at the same time effects an alteration in the color does not make him guilty under the statute of introducing artificial coloring matter into the same ; that it is produced by the legitimate process of the manufacture itself.
These views, I think, are supported by the decision of the Supreme Court of New Jersey, in the case of Amman v. State Dairy Commissioner, 50 N. J. 543, the syllabus of which is this: “ In sec. 5, of the oleomargarine act, the clause ‘ anotta or any other coloring matter or substance ’ includes only those substances which in the manufacture of oleomargarine, etc., are used like anotta, solely or chiefly to color the product, and does not extend to the materials which are employed chiefly to make up the substance of the compound, and which impart color only as a necessary incident of their use.”
But in view of the difference of opinion of the members of the court on this point, the judgment will be affirmed.